UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MAURICE GRIFFIN, MITZI GRIFFIN, )
                                 )
              Plaintiffs         )
                                 )
         v.                      )   CIVIL NO. 2:10 cv 387
                                 )
ALLSTATE PROPERTY AND CASUALTY   )
INSURANCE COMPANY,               )
                                 )
              Defendant          )

OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment [DE 25] filed by the defendant, Allstate Property and
Casualty Insurance Company, on April 2, 2012; the Motion for
Partial Summary Judgment [DE 33] filed by the plaintiffs, Maurice
and Mitzi Griffin, on April 2, 2012; and the Motion to Strike [DE
39] filed by the plaintiffs on May 4, 2012.  For the reasons set
forth below, the Motion for Summary Judgment [DE 25] filed by
Allstate is **GRANTED**; the Motion for Partial Summary Judgment [DE
33] filed by the Griffins is **DENIED**; and the Motion to Strike [DE
39] is **GRANTED**.

Background

This case arises out of an October 31, 2009, fire at 252
Morningside Avenue, Gary, Indiana, the home of the plaintiffs,
Maurice and Mitzi Griffin.  The Gary Fire Department responded to
the fire at 10:57 p.m. and found the premises locked and secured.

The Gary Fire Department forced entry into the home through the front door and indicated so in its report.  The owner of the property, Maurice Griffin, later signed an affidavit stating that there were two other entry points to the premises.

Dwayne Hull, a fire investigator for the Gary Fire Department, investigated the fire at the Griffins' home.  Hull observed a one foot by three foot hole cut in the floor of the first floor living room, which Maurice indicates was part of the home's HVAC system.  The hole smelled of a petroleum based substance.  Hull observed several empty containers in the home that smelled of a petroleum based substance and found a spout from a container in the hole cut into the living room floor.  Hull noted an overwhelmingly strong odor in the first floor living and dining rooms.  Based on his findings, he concluded that the fire was incendiary by person or persons unknown.

Hull contacted NIPSCO and discovered that the gas service to the home had been shut off at the meter as of April 29, 2009, and the electricity had been shut off at the pole on April 2, 2009.  The property owner's wife, Mitzi Griffin, acknowledged in her recorded statement that they did not have electrical service in the home at the time of the fire.  She stated that all other utilities, including water, sewer, and gas, were on and the payments current.  Mitzi testified that the gas was placed in her

name.  Mitzi later prepared an affidavit stating that the gas was not placed in her name, instead it was placed in the name of her corporation, Masish's House.  Maurice similarly stated that the gas was on at the time of the fire.  It previously had been shut off because they were behind on their payments, but it was switched into his wife's name and turned back on.  He agreed they had been without electricity since April or May 2009.  The information provided by NIPSCO showed that the gas and electric never were restored after the services were shut off and that the natural gas service to the plaintiffs' address never was under any name other than "Oscar M. Griffin."

At the time of the fire, the plaintiffs held an insurance policy for the property with Allstate Property Insurance Company effective July 23, 2009 through July 23, 2010.  The policy provided dwelling protection coverage with limits of $420,979, personal property protection coverage with limits of $252,588, and living expense coverage not to exceed $42,098.  The policy stated in relevant part:

> **Insuring Agreement**
>
> In reliance on the information you have given us, Allstate agrees to provide the coverages indicated on the Policy Declarations. In return, you must pay the premium when due and comply with the policy terms and conditions, and inform us of any change in title, use or occupancy of the residence premises.

**Concealment Or Fraud**

We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.

**Losses We Do Not Cover Under Coverages A, B and C:**
**We** do not cover loss to the property described in
**Coverage A — Dwelling Protection,**
**Coverage B — Other Structures Protection** and
**Coverage C — Personal Property Protection**
caused by or consisting of:

* * *

7.  The failure by any insured person to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss we cover.

8.  Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an insured person.

9.  Intentional or criminal acts of or at the direction of any insured person, if the loss that occurs:

    a)  may be reasonably expected to result from such acts; or

    b)  is the intended result of such acts.

This exclusion applies regardless of whether or not the insured person is actually charged with or convicted of a crime.

**Misrepresentation, Fraud, or Concealment**

[Allstate] may void this policy if it was obtained by misrepresentation, fraud, or

concealment of material facts. If [Allstate] determines that this policy is void, all premiums paid will be returned to you since there has been no coverage under this policy.

[Allstate] does not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.

**What You Must Do After a Loss**

In the event of a loss to any property that may be covered by this policy, you must . . .

* * *

c)   Separate damaged from undamaged personal property. Give us a detailed list of the damaged, destroyed or stolen property, showing us the quantity cost, actual cash value and the amount of the loss claimed.

d)   Give us all accounting records, bills, invoices, and other vouchers, or certified copies, which we may reasonably request to examine and permit us to make copies.

The Griffins submitted an insurance claim with Allstate. In response, Allstate retained a certified fire investigator, Ronald Klein of Herbert Analytical Laboratories, Inc., to investigate the fire. Klein conducted an investigation of the fire scene on November 4, 2009. Klein noted that he detected an odor similar to gasoline in separate rooms of the home. Klein determined that the fire originated in multiple areas of the home, including the

second floor stairway, a second floor foyer, the master bedroom, and the northeast corner bedroom. He found a cotton robe on the living room floor, and laboratory testing revealed gasoline residue on the robe. He noted that gasoline was found in other areas of the home that had not been ignited.  Klein determined that the fire was caused by the intentional ignition of gasoline in the areas of origin.

On November 4, 2009, a recorded statement was obtained from Mitzi Griffin.  She stated that she, her husband, and their four children lived in the house on the day of the incident.  On October 31, 2009, they left their home at 5:00 p.m. to spend the weekend with her oldest daughter and granddaughter.  At the time they left, all windows and doors to their home were locked.  She stated that they went trick or treating at the malls and arrived at her daughter's apartment between 9:00 and 9:30 p.m. They spent the night at her daughter's apartment October 31, 2009, and Sunday, November 1, 2009.

Maurice Griffin testified in an examination under oath on March 5, 2010.  He first stated that he never had been sued as a defendant and did not have any outstanding judgments against him at the time of the loss.  He testified that the payments for the water service to their home were current at the time of loss.

On the day of the incident, Maurice stated that he, his
wife, and his four children left together in his truck to go to
his oldest daughter's apartment.  They planned to spend the
weekend with his daughter and packed overnight bags.  At the time
they left, four power pack generators were left in the home, and
the home was locked and secured.  Maurice, his wife, and two of
the children were the only people with keys to his home.  They
arrived at their daughter's apartment around 6:00 p.m.  They did
not have a key to their daughter's apartment, but she was home
when they arrived.  After arriving, they all went trick or treat-
ing, but his granddaughter did not have a costume.

Mitzi also submitted to an examination under oath on March
5, 2010.  She testified that the gas had been reconnected after
it had been placed in her name in August 2009 and that their
water service had been terminated because they owed $400.  How-
ever, it was reinstated when the water service account was placed
in her name, and she claimed that the payments were current.

Indiana American Water Company, Inc.'s records show that
water service was provided to the plaintiffs' home from October
15, 2004 through August 17, 2009, and the last payment was made
on or about May 13, 2009.  Water service was terminated August
17, 2009.  On August 31, 2009, Indiana American Water received a
fax from Mitzi Bass, a tenant at the address, which enclosed a

lease agreement for the property and asked for the water service to be restored. Water and waste service was restored on September 8, 2009, under the name Mitzi Bass. As of October 31, 2009, there was an unpaid balance of $487.32 on the water service account.

Mitzi also testified that the electric service had been terminated prior to the loss in either April or May 2009. There was an outstanding bill of approximately $5,000. Mitzi also owed approximately $4,000 in medical bills at the time of the loss. She testified that their financial condition was "rocky." It later was discovered that Maurice Griffin was the defendant in a suit pending in the Circuit Court of Cook County and that on June 15, 2009, he had a judgment entered against him in the amount of $1,355.71.

With regard to the events that occurred on the night of the fire, Mitzi testified that when they arrived at their daughter's apartment her daughter was home. She and her family did not pack any type of overnight bags, but they did take two of their four power packs. They did not go trick or treating after arriving at her daughter's apartment, but her granddaughter was wearing a pumpkin costume.

On January 19, 2010, Jon Anderson interviewed the plaintiffs' adult daughter, Mylaura Griffin, at her residence.

Mylaura stated that on the evening of October 31, 2009, she and her daughter had been out visiting with her daughter's father. She stated that she and her daughter did not return to her apartment until 9:30 or 10:00 p.m. When she arrived, her parents and her four siblings already were at her apartment.

After conducting its investigation, Allstate determined that the Griffins breached certain provisions of the insurance policy and declined to provide coverage. Specifically, Allstate found that the Griffins breached paragraph 3(d), requiring the production of all accounting records, bills, invoices and other vouchers, or certified copies; paragraph 3(f)(2), requiring the insured to submit and sign an examination under oath; and paragraph 3(g), requiring the insured to sign a sworn proof of loss within 60 days. Allstate also denied coverage under the provision allowing denial for intentional or criminal acts. Allstate determined, based on the evidence discovered during its investigation, that the Griffins either caused or encouraged the fire to be ignited.

On August 17, 2010, the Griffins filed their complaint, alleging that Allstate breached the insurance contract and their duty of good faith. The Griffins and Allstate now move for summary judgment. The Griffins also move to strike certain evidence

that Allstate submitted in support for its motion for summary
judgment.

## Discussion

To support a claim that has been challenged on summary
judgment, an affidavit may not be based upon "self-serving
statements . . . without factual support in the record." ***Thanong-
sinh v. Board of Education***, 462 F.3d 762, 781 (7th Cir. 2006)
(*quoting **Butts v. Aurora Health Care, Inc.***, 387 F.3d 921, 925
(7th Cir. 2004)). Rather, Federal Rule of Civil Procedure 56(e)
requires that an affidavit must be "made on personal knowledge
[and] set forth facts as would be admissible in evidence." Evi-
dence contained in the affidavit must be excluded if it does not
comply with the Federal Rules of Evidence. For example, hearsay
is not admissible, ***Wigod v. Chicago Mercantile Exchange***, 981 F.2d
1510, 1519 (7th Cir. 1992), unless it comes within a recognized
exception to the hearsay rule. ***Oriental Health Spa v. City of
Fort Wayne***, 864 F.2d 486, 490—91 (7th Cir. 1988) (applying Rule
803(8)). In addition, a party resisting summary judgment may not
"patch-up potentially damaging deposition testimony with a
contradictory affidavit." ***Commercial Underwriters Insurance
Company v. Aires Environmental Services, Ltd.***, 259 F.3d 792, 799
(7th Cir. 2001). *See also **Buckner v. Sam's Club, Inc.***, 75 F.3d
290, 292 (7th Cir. 1996) ("[T]he law of this circuit does not

permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict deposition or sworn testimony."). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of DuPage*, 715 F.2d 1238, 1243 (7th Cir. 1983). *See also* **Drake v. Minnesota Mining and Manufacturing Company**, 134 F.3d 878, 886 (7th Cir. 1998). A party may move to strike evidence used to support a motion for summary judgment that does not comply with these standards.

The Griffins ask the court to strike Allstate's Exhibit 5D, identified as a full and correct copy of the insurance policy, and Exhibit 11, an affidavit submitted by Jon Anderson. Allstate concedes that Exhibit 5D is not a full and accurate copy of the insurance policy and that it was inadvertently attached to the motion. Exhibit 5D never was referenced or relied on in its motion or supporting brief. Because Exhibit 5D was not an accurate representation of the policy, the court GRANTS the Griffins' motion and STRIKES Exhibit 5D.

The Griffins also ask the court to strike certain paragraphs of Anderson's affidavit as inadmissible hearsay. Paragraphs 4 and 5 of his affidavit state:

4.  Ms. [Mylaura] Griffin stated that on the
    evening of the October 31, 2009 fire,
    she and her daughter had been out visit-
    ing with her daughter's father. She
    stated that they did not return home
    until some time between 9:30pm and
    10:00pm.

5.  Mylaura Griffin stated that when she
    arrived at her apartment, some time
    between 9:30pm and 10:00pm, her parents
    and four siblings were at her apartment.
    She stated that her parents spent the
    night at her apartment.

Allstate argues that Anderson's statements have not been offered
to prove that Mylaura Griffin's account of the events is accu-
rate. Rather, Anderson's account of his conversation with
Mylaura is being used to show that Allstate received this state-
ment and considered it when evaluating the claimed loss. In
short, the statements are being offered to prove the effect on
the listener, rather than for the truth of the matter asserted.

"Statements offered not for their truth but simply to show
that they were made and heard by the listener are not hearsay and
are therefore admissible." *Patterson v. Burns*, 670 F.Supp.2d
837, 845 (S.D. Ind. 2009). The court will limit its consider-
ation of these statements to the effect it had on Allstate in
rendering its coverage determination and will not consider the
evidence to the extent that it attempts to establish the course
of events. Having established the evidence that the court may

consider, the court will now turn to the cross motions for summary judgment.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Kidwell v. Eisenhauer,* 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at 786.  A fact is material if it is outcome determinative under applicable law.  There must be evidence on which the jury could reasonably find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Stephens*, 569 F.3d at 786; *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).  However, summary judgment may be entered against the non-moving party if it is unable to "establish the existence of an essential element to [the party's case, and on which [that party] will bear the burden of proof at

13

trial . . .".  **Kidwell**, 679 F.3d at 964 (*citing* **Benuzzi v. Bd. of Educ.**, 647 F.3d 652, 662 (7th Cir. 2011) (*quoting* **Celotex Corp.,** 477 U.S. at 322, 106 S.Ct. at 2548).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles.  **Ashman v. Barrows,** 438 F.3d 781, 784 (7th Cir. 2006).  Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact.  **Wheeler**, 539 F.3d at 634 (*citing* **Anderson**, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* **Reeves v. Sanderson Plumbing Prods., Inc**., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); **Celotex Corp**., 477 U.S. at 322-23, 106 S.Ct. at 2553; **Stephens,** 569 F.3d at 786; **Argyropoulos v. City of Alton**, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); **Springer v. Durfling-er,** 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Interpretation of an insurance policy is a question of law to be decided by the court. **National Fire and Casualty Company v. West**, 107 F.3d 531, 534 (7th Cir. 1997). Insurance policies are interpreted according to the same rules of construction as other contracts. **Barga v. Indiana Farmers Mut. Ins. Group, Inc**., 687 N.E.2d 575, 578 (Ind. App. 1997); **Colonial Penn Ins. Co. v. Guzorek**, 690 N.E.2d 664, 667 (Ind. 1997). Words are given their plain and ordinary meaning, and ambiguities are to be resolved in favor of the insured. **Anderson v. State Farm Mut. Auto Ins. Co**., 471 N.E.2d 1170, 1172 (Ind. App. 1984). When interpreting the

contract, the court favors a meaning that provides coverage to the insured. *West*, 107 F.3d at 535; *Barga*, 687 N.E.2d at 578.

The Griffins first allege that Allstate breached the insurance contract by failing to provide coverage. Allstate counters that it appropriately denied coverage because the Griffins provided material misrepresentations during the course of its investigation, voiding Allstate's duty to cover the loss, and did not fulfill their obligations under the contract.

The insurance policy the Griffins held with Allstate stated that coverage could be denied if the insured made material misrepresentations. *See Tenore v. American & Foreign Insurance Co. of New York*, 256 F.2d 791, 794-95 (7th Cir. 1958) ("Policies of fire and property indemnity insurance usually provide that any fraud or false swearing on the part of the insured, whether before or after loss, shall relieve the insured from liability."). "Under such a provision, false statements as to material matters wilfully made by the insured in proofs of loss with the intention of thereby deceiving the insurer will preclude any recovery on the policy by the insured." *Tenore*, 256 F.2d at 795. Whether a misrepresentation is material generally is a question of fact for the jury to decide. *Prudential Insurance Co. Of America v. Winans*, 325 N.E.2d 204, 206 (Ind. 1975); *Prentiss v. Mutual Ben. Health & Accident Association*, 109 F.2d 1, 3-4 (7th

Cir. 1940).  However, when no reasonable minds could differ on whether the misrepresentation is material, the court may enter judgment accordingly.  *Prudential*, 325 N.E.2d at 206; *Prentiss,* 109 F.2d at 4.  A material fact is one that could have caused the insurer to decide otherwise.  *See Prentiss*, 109 F.2d at 3.  "If a false statement is knowingly made by the insured with regard to a material matter, the intent to defraud will be inferred, the law presuming every man to intend the natural consequences of his acts."  *Tenore*, 256 F.2d at 795.

When determining whether to deny a claim on the grounds that the insured committed arson, insurance companies generally look at whether the fire was incendiary in nature, the financial viability of the insured, the whereabouts of the insured at the time of the fire, whether the premises were secured, and who had access to the premises.  *Dean v. Insurance Co. of North America*, 453 N.E.2d 1187, 1195-96 (Ind. App. 1983) (*citing Weed v. American Home Assurance Co.*, 458 N.Y.S.2d 27 (N.Y. 1982) (origin of fire was incendiary in nature; property (a tavern) was for sale and no offers to purchase had been made for three-month period before fire; business had sustained financial loss; and insured and another were last ones to leave building, about one hour before the fire); *Godwin v. Farmer's Insurance Group*, 631 P.2d 571, 574-75 (Ariz. App. 1981) (fire investigators concluded blaze

was incendiary; insured was at scene of fire and all entrances to home were locked prior to fire; insured had been trying unsuccessfully to sell the home and due to zoning restrictions, would have recovered substantially more from fire insurance than from sale of dwelling; insured was in financial difficulty); *Rist v. Commercial Union Ins. Co.*, 376 So.2d 113, 114 (La. 1979) (fire was incendiary in origin; insured had been unsuccessful in attempts to sell the house and was in bad financial straits; insured recently had procured insurance and had moved new furniture out of the home shortly before the fire; and insured and girlfriend made conflicting statements as to insured's whereabouts at time fire started); *Lawson v. State Farm Fire & Casualty Ins. Co.*, 585 P.2d 318, 363 (Col. App. 1978) (fire in shop resulted from pouring of accelerant; insured and his wife had only keys for locks to premises and access was secure when firemen arrived; insured's and wife's statements as to their whereabouts indicated they might have been able to have started the fire; insured had unsuccessfully tried to sell the business and was in financial distress at the time of fire); *Quast v. Prudential Property & Casualty Co.*, 267 N.W.2d 493, 494 (Minn. 1978) (accelerant was used to start fire; insured was in financial difficulty and had been unsuccessfully trying to sell the home; insured claimed to have locked all the doors and left for a

bar three hours before fire started); *Gregory's Continental Coiffures & Boutique, Inc. v. St. Paul Fire & Marine Ins. Co.*, 536 F.2d 1187, 1191 (7th Cir. 1976) (plastic drums containing gasoline were found on premises and insured recently had purchased similar drums; premises were secured prior to the fire and there were no signs of forced entry; and the insured was in a "very shaky" financial condition)).

Here, the Griffins' misstatements went directly to the information Allstate needed to consider in making its coverage determination. It is undisputed that the Griffins changed their story on multiple occasions. In one account, Maurice and Mitzi were alone in the house and in another they had four of their children with them. They gave different stories as to the time they left their house, where they went, and what they took with them. Maurice stated that the family took overnight bags, but Mitzi denied this. Maurice stated that the four power generators were left at the house, but Mitzi stated that they took two with them. On different occasions, Maurice and Mitzi gave inconsistent accounts of when they left for their daughter's apartment, what they did after leaving their home, what time they arrived at their daughter's, whether their daughter was present upon arrival, and whether they had keys to their daughter's apartment.

The Griffins also made several misstatements about their financial condition. Maurice testified that he never had been a party to a lawsuit and did not have any judgments pending against him, however, it later was revealed that there was an outstanding judgment entered against him. The Griffins testified that their water and gas bills were current, though they had a balance due on both. They stated that they had gas service at the time of the fire, but the utility service's records indicated otherwise.

It is undisputed that the Griffins changed their accounts of the course of events and the status of their utilities on multiple occasions. Because the record unequivocally shows that the Griffins gave different accounts of evidence that was pertinent to Allstate's coverage determination, and no reasonable minds could differ on whether the Griffins gave conflicting information, the court finds that the Griffins misrepresented facts essential to their claim and violated their duties under the insurance contract.

Allstate also has pointed to a separate provision in the insurance contract which mandated that after a loss, the insured party had to submit to an examination under oath and provide certain documents upon request. The Griffins failed on both accounts, and now argue that the requested documents were lost in the fire and unavailable. The Griffins complain "how is an

ordinary policyholder of average intelligence supposed to know what to do" when the documents were not in their possession. However, Allstate also requested the documents from the Griffins' attorney on four occasions prior to denying coverage. Allstate sent correspondence on March 15, 2010, April 6, 2010, April 26, 2010, and May 27, 2010. Assuming the Griffins were unaware of how to secure the requested documents, their counsel should have been apprised of the Griffins' duty to provide the documents. The contract clearly stated that "In the event of a loss to any property that may be covered by this policy, you must: . . . (d) give us all accounting records, bills, invoices and other vouchers, or certified copies, which we may reasonably request to examine and permit us to make copies." The plain language of the contract leaves no doubt that the Griffins were responsible for providing the documents. The Griffins do not deny that they never provided these documents.

Additionally, under section (f) of the same provision, the Griffins were required to sign a transcript of the examinations under oath. Again, the Griffins do not dispute that they did not comply with this provision. "Compliance [with a Your Duties After Loss provision] is not optional or subject to a trial court determination of reasonableness." ***Foster v. State Farm Fire and Casualty Co.***, 674 F.3d 663, 667 (7th Cir. 2012). The Griffins

had a duty to comply with both provisions and failed to satisfy their obligations under the policy. It is undisputed that the Griffins did not comply with the clear terms of the contract and breached their duties thereunder.

Because the Griffins violated their duties under the contract, Allstate was not required to provide coverage. For this reason, it is unnecessary to address the Griffins' motion for partial summary judgment, seeking a declaration that Allstate failed to articulate admissible evidence that the Griffins set or caused the fire to be set. However, the court will address this issue because it has been briefed by the parties.

Allstate was not required to have direct evidence that the Griffins set or caused the fire to be set and could rely on circumstantial evidence. *Hoosier Insurance Co. v. Mangino*, 419 N.E.2d 978, 986 (Ind. App. 1981); *Gregory's Continental Coiffures,* 536 F.2d at 1191. The fire investigation and Allstate's expert's report revealed that the fire was intentionally set, and the fire report indicated that there was no evidence of forced entry. The Griffins' account of their whereabouts continuously changed, diminishing their credibility. Among their misrepresentations were statements concerning their financial viability, giving Allstate a reason to believe the Griffins had a motive to set the fire. Together, these facts provide reasonable grounds

for Allstate to deny coverage, as will be discussed more thoroughly below.

The Griffins also complained that Allstate acted in bad faith by denying coverage. A duty to deal in good faith is implied in all insurance contracts. ***Brady v. Allstate Indemnity Co.***, 788 N.E.2d 916, 920 (Ind. App. 2003). This duty "includes an obligation to refrain from causing an unfounded delay in making payment; making an unfounded refusal to pay policy proceeds; exercising an unfair advantage to pressure an insured into settlement of his claim; and deceiving the insured." ***Hoosiers Insurance Co. v. Audiology Foundation of America***, 745 N.E.2d 300, 310 (Ind. App. 2001) (*citing* ***County Line Towing, Inc. v. Cincinnati Insurance***, 714 N.E.2d 285, 291 (Ind. App. 1999)). This duty is not breached if the insurer has a good faith dispute over the amount or grounds for recovery. ***Erie Insurance Co. v. Hickman by Smith***, 622 N.E.2d 515, 519-20 (Ind. 1999). A finding of bad faith requires evidence of a state of mind reflecting a dishonest purpose, moral obliquity, furtive design, or ill will. ***Hoosiers Insurance,*** 745 N.E.2d at 310. In order to breach its duty, an insurer must deny liability knowing there is no rational, principled basis for doing so. ***Erie Insurance,*** 622 N.E.2d at 520.

When an insurer raises an arson defense, it must show by a preponderance of the evidence that the insured willfully burned

the property.  *Dean*, 453 N.E.2d at 1194.  This can be accom-

plished through direct or circumstantial evidence.  *Mangino*, 419

N.E.2d at 986; *Gregory's Continental Coiffures*, 536 F.2d at 1191.

Such circumstantial evidence may include reports from investiga-

tors that the fire was the result of arson, absence of evidence

of forced entry (specifically when coupled with evidence that the

insured was the only party with keys), and the insured's finan-

cial condition.  *Gregory's Continental Coiffures*, 536 F.2d at

1191.  An insurer acts in good faith so long as it has a reason-

able suspicion of arson by the insured and breaches its duty only

when it has no legitimate basis for denying the claim.  *Sexson v.*

*State Farm Fire and Casualty Co.*, 2003 WL 1466620, *4 (7th Cir.

March 12, 2003).

Here, Allstate had sufficient reason to believe that the

Griffins committed arson.  The two experts determined that the

fire was incendiary in nature and began as a result of petroleum

poured throughout the house.  The fire report stated that the

entrances were secure, and only Maurice, Mitzi, and two of their

children had keys.  The Griffins' financial position was "rocky".

Their utilities had been disconnected, they were behind in their

payments, a judgment had been entered against Maurice, and Mitzi

owed $4,000 in medical bills.  The Griffins stood to gain a

significant sum from the insurance policy.  In addition, the

Griffins provided several different accounts of their whereabouts on the night of the fire and may have had the opportunity to set the fire. Taken together, Allstate had sufficient reason to believe the Griffins set or caused the fire to be set. Therefore, Allstate did not breach its duty of good faith.

The Griffins also requested punitive damages for Allstate's breach of its duty to exercise good faith. Punitive damages may be awarded if the plaintiff shows by clear and convincing evidence that the insurer acted with malice, fraud, gross negligence, or oppressiveness. *Nelson v. Jimison*, 634 N.E.2d 509, 512 (Ind. App. 1994). Because the court determined that Allstate acted in good faith and had sufficient grounds on which to raise the arson defense, the Griffins are not entitled to punitive damages.

_____

The court finds that the Griffins did not fulfill their obligations under the insurance contract and that Allstate acted in good faith. Based on the foregoing, the Motion for Summary Judgment [DE 25] filed by the defendant, Allstate Property and Casualty Insurance Company, on April 2, 2012, is **GRANTED;** the Motion for Partial Summary Judgment [DE 33] filed by the plaintiffs, Maurice and Mitzi Griffin, on April 2, 2012, is **DENIED;**

and the Motion to Strike [DE 39] filed by the plaintiffs on May 4, 2012, is **GRANTED.**

ENTERED this 21st day of August, 2012


s/ ANDREW P. RODOVICH
    United States Magistrate Judge